TEXAS COURT OF
APPEALS, THIRD DISTRICT, AT AUSTIN

 

 

NO.
03-10-00411-CV

 

 

 

The Boeing Company, Appellant

 

v.

 

Greg Abbott, Attorney General of Texas, and The Greater Kelly Development Authority n/k/a The Port
Authority of San Antonio, Appellees

 

 

 

FROM THE DISTRICT COURT OF TRAVIS
COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-05-004504, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

 

 

 

O P I N I O N

 

Boeing Company
appeals from the district courts
final judgment denying Boeings
request for declaratory and injunctive relief under the Texas Public
Information Act (PIA).  See Tex. Govt Code Ann.  552.001-.353 (West 2004
& Supp. 2010).  Boeing brought
suit seeking to prevent disclosure of portions of a real property lease
agreement between Boeing and The Greater Kelly Development Authority n/k/a The
Port Authority of San Antonio (the
Port).  The final judgment denies Boeing its
requested relief and orders that the information at issue be made available to
the requestor.  We affirm the district courts
judgment.

 

BACKGROUND








Boeing is a
major aerospace company, providing goods and services to both the private and
public sectors.[1]  In 1995, Boeings
lease with American Airlines in Tulsa, Oklahoma, was ending, and Boeing had
begun a nationwide search for suitable, substitute property to lease.
Eventually, Boeing entered into lease negotiations with the Port regarding
property at the former Kelly Air Force Base in San Antonio, Texas (Kelly).

According to
Boeing, these lease negotiations continued for more than two years
and involved more than twelve Boeing employees.  In addition, Boeing hired
outside consultants to develop a competitive
range
model with respect to any proposed lease terms.  Through negotiations, Boeing sought to obtain
lease terms within this competitive range in order to assure its ability to
compete for future government contracts from the Kelly location.

According to
the Port, in order to induce Boeing to relocate to San Antonio, the City of San
Antonio secured a $32.5 million loan from the U.S. Department of Housing and
Urban Development to pay for property improvements at Kelly.  In turn, the City of San Antonio loaned the
Port $32.5 million to complete the improvements.  In 1998, Boeing and the Port executed a lease
for approximately 1.3 million square feet at Kelly for an initial term of
twenty years (the
Lease).
The Port claims that Boeings
payments under the Lease help the Port repay the loan to the City of San
Antonio.








At Kelly,
Boeings
work has consisted primarily of aircraft maintenance and modification for the
United States Air Force.  Among the
aircraft serviced by Boeing at Kelly are the C-17 Globemaster,
the C-130 Hercules cargo aircraft, and the KC-135 Stratotanker.  Under contracts with the Air Force, Boeing is
responsible for upgrading and maintaining these aircraft as necessary.  For example, Boeing services K-135s,
Eisenhower-era tankers which provide in-flight refueling, by doing complete
upgrades and periodic inspections to determine if the airplanes are safe to
continue in operation.  Similarly, Boeing
upgrades C-17s, an aircraft used in both military and humanitarian missions, by
making their configurations more uniform and thus easier to fly and
maintain.  Boeing also installs defensive
countermeasures on the C-17s, allowing the aircraft to thwart missile attacks
when supplying forces in hostile areas. 
Finally, Boeing is responsible for modernizing the avionics of over two
hundred C-130s, a four engine turbo-prop cargo plane that has been in
continuous use for more than fifty years.

In 2005, Robert
Silvas made a request under the PIA for, among other
things, the Lease between Boeing and the Port.[2]  Boeing notified the Attorney General of Texas
of its objections to the release of certain Lease terms, primarily related to
amounts paid by Boeing under the Lease, including rental rates, share of common
maintenance costs, insurance-coverage requirements, liquidated-damages
provisions, and lease incentives (the
Lease information).
See Tex. Govt
Code Ann. 
522.305(b) (West 2004) (providing that person whose privacy or property
interests are implicated by request may submit reasons for withholding
information to attorney general).  Upon
considering Boeings
objections, the attorney general issued a letter ruling determining that the
Lease information was not excepted from
disclosure under the PIA.[3] 








Boeing then filed
suit against the attorney general and the Port, challenging the attorney
generals
ruling.[4]  In this suit, Boeing sought a declaration
that the Lease information is not subject to disclosure because the information
falls within one or more exceptions to disclosure under the PIA.  Boeing also sought an injunction to prevent
the Port from disclosing the information on this basis.  See id. 
552.3215 (West 2004) (providing that person who claims to be victim of PIA
violation may bring suit for declaratory judgment or injunctive relief).  After a bench trial on the merits, the court
denied Boeing any relief and ordered that the Port make the information
available to Silvas. 
The court then issued findings of fact and conclusions of law.  In relevant part, the court found that (1)
the Lease is a contract relating to the receipt or expenditure of public or
other funds of a government body, (2) the Lease information is not a trade
secret, and (3) the Lease was negotiated between Boeing and the Port and is
fully executed, is not the result of competitive bidding, and is not subject to
any competitive-bid process.  The court
issued the following relevant conclusions of law:

 

1.         This is a suit by [Boeing] seeking to withhold information from
a requestor, pursuant to the Texas Public Information Act (PIA), Tex. Govt
Code  552.325 (West
2004).

 

. . . 

 

5.         Common law trade secrets does [sic] not protect the information at issue
from disclosure.

 

. . . 








 

9.         Tex. Govt Code 
552.104 does not except the information at issue from disclosure.

 

10.       [Boeing] lacks standing to assert section
552.104 as a basis for withholding the information at issue.

 

. . .

 

14.       The information at issue must be
disclosed under Tex. Govt
Code  552.022(a)(3); no other law, including common law trade secrets,
expressly makes the information confidential.

 

On appeal,
Boeing asserts that the trial court erred in ordering disclosure of the Lease
information.  Specifically, Boeing asserts
in three issues that (1) the Lease information is a trade secret, and therefore
protected from disclosure under section 552.022 as expressly
confidential under other law,
(2) Boeing has standing to invoke section 522.104 of the PIA, and (3) the Lease
information would give advantage to a competitor or bidder and therefore is
protected from disclosure under section 522.104 of the PIA.

 

STANDARD OF REVIEW

In an appeal of
a bench trial, findings of fact issued by the trial court have the
same force and effect as a jury verdict. 
Anderson v. City of Seven Points, 806 S.W.2d
791, 794 (Tex. 1991). 
Unchallenged findings of fact are binding on an appellate court unless
the contrary is established as a matter of law or there is no evidence to
support the finding.  See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696-97 (Tex. 1986).  As the fact finder, the trial court is the
sole judge of the credibility of the witnesses and the weight to be given their
testimony.  Id.








We review a trial courts
conclusions of law de novo.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Similarly, issues of statutory
construction are questions of law that are reviewed de novo.  City of San Antonio v.
City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).  In construing a statute, our primary objective
is to determine the legislatures
intent, which, when possible, we discern from the plain meaning of the words
chosen.  Id.  Accordingly, once the facts are established,
a determination of whether an exception under the PIA applies to support the
withholding of public information is a question of law.  See City of
Garland v. Dallas Morning News, 22 S.W.3d 351, 357 (Tex. 2000).

 

DISCUSSION

 

 

The Texas Public Information Act

The
express purpose of the PIA is to ensure public access to complete information
about the affairs of government and its public officials and employees.  See Tex. Govt Code Ann.  552.001(a) (West 2004).  Through this access to information, the
public may
retain control over the instruments they have created.  Id. 
Consistent with this policy, the legislature has mandated that the PIA
is to be liberally construed in favor of granting requests for
information.  Id.  552.001(b).








Under the PIA,
information that is collected, assembled, or maintained by or for a
governmental body is public information.  Id.  552.002(a) (West 2004).  Public information is available upon request
and may not be withheld from disclosure unless it falls within an exception to
disclosure provided for in the PIA.  In
re City of Georgetown, 53 S.W.3d 328, 331 (Tex. 2001) (orig. proceeding);
Arlington Indep. Sch. Dist. v. Texas Attorney Gen.,
37 S.W.3d 152, 157 (Tex. App.Austin
2001, no pet.).  The exceptions to
disclosure under the PIA are to be narrowly construed.  Arlington Indep. Sch. Dist., 37
S.W.3d at 157.  A
governmental body that wishes to withhold requested information must request a
determination from the attorney general, asserting which exceptions under the
PIA permit the governmental body to withhold the information.  Id. 
A governmental body generally waives any exception to disclosure that it
fails to raise before the attorney general. 
Tex. Govt
Code Ann. 
522.326 (West 2004).

In addition,
section 552.022 of the PIA sets out categories of public information that are excluded from the exceptions provided for in the
PIA.  Texas Dept
of Pub. Safety v. Cox Tex. Newspapers, L.P., 343 S.W.3d 112,
114 (Tex. 2011); see Tex. Govt Code Ann.  552.022 (West 2004).  Requested information that falls within one
of these categories is considered core public information and must be disclosed
unless it is expressly
confidential under other law, meaning
law other than the PIA.  Tex. Govt
Code Ann. 
552.022(a);  Cox
Tex. Newspapers, 343 S.W.3d at 114; see also In re City of
Georgetown, 53 S.W.3d at 331. 
Information in a contract relating to the receipt or expenditure of
public or other funds by a governmental body is a category of information
considered core public information under section 522.022(a)(3).  See Tex. Govt Code Ann.  552.022(a)(3).








In this case,
the trial court found that the Lease is a contract
relating to the receipt or expenditure of public or other funds of a government
body.  Accordingly, the court concluded that
disclosure of the Lease information is governed by 522.022(a)(3).  Boeing does not dispute that the information
sought is public information or that it is core public information under
section 552.022(a)(3). 
Rather, Boeing argues that the Lease information is a common-law trade
secret and therefore protected from disclosure under section 552.022 as expressly confidential under
other law.  See id. 
552.022(a). 
Boeing also contends that the Lease information falls within section
552.104, which excepts from disclosure informationeven
core public informationthat
if disclosed would give
advantage to a competitor or bidder.  Id.  552.104(b) (West 2004).[5]

 

Trade-secret protection under section
522.022

 








We turn first
to whether the Lease information is expressly
confidential under other law
and therefore exempt from the mandatory disclosure requirement of section
522.022.  At trial and now on appeal,
Boeing argues that the Lease information is expressly
confidential under other law
because it is a common-law trade secret. 
This Court has previously recognized that common-law trade-secret
information is treated as confidential and exempt from mandatory disclosure
under section 552.022 of the PIA.  See Center for Econ. Justice v. American Ins. Assn, 39 S.W.3d 337, 348 (Tex.
App.Austin
2001, no pet.) (finding that common-law trade-secret information is
confidential and entitled to protection from disclosure, even though otherwise
subject to mandatory disclosure under section 522.022); see also Tex. R.
Evid. 507 (trade-secret privilege); In re City of
Georgetown, 53 S.W.3d at 337 (noting that documents privileged or
confidential under Texas Rules of Civil Procedure or Texas Rules of Evidence
are expressly
made confidential under other law
under section 522.022).  Because the
Lease information is exempt from mandatory disclosure under section 522.022 if it
is a trade secret, we next examine whether the Lease information constitutes a
common-law trade secret.

At trial,
Boeing had the burden of establishing that the Lease information is a trade
secret.  See Trilogy Software, Inc. v.
Callidus Software, Inc., 143 S.W.3d 452, 467
(Tex. App.Austin
2004, pet. denied).  Unless established
or disproved as a matter of law, the existence of a trade secret is a question
of fact.  See Rustys Weigh Scales & Serv., Inc.
v. North Tex. Scales, Inc., 314 S.W.3d 105, 109 (Tex. App. El Paso 2010, no pet.)
(explaining that appellant had burden at trial to present evidence of existence
of trade secret to support findings of fact on misappropriation-of-trade-secret
claim); see also Zoecon Indus. v. American
Stockman Tag Co., 713 F.2d 1174, 1179 (5th Cir. 1983) (Whether customer information is
generally known or readily ascertainable is a question of fact.). As the fact finder, the
trial court found that the Lease information is not a trade secret.  This Court is bound to this finding unless
the evidence demonstrates, as Boeing contends it does, that the Lease
information is a trade secret as a matter of law.  See McGalliard,
722 S.W.2d at 696-97. 
The Lease information is a trade secret as a matter of law only if we
determine, after examining the entire record, that the evidence conclusively
establishes that the Lease information is a trade secret.  See Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001).

A trade secret
is any formula, pattern, device, or compilation of information which is
used in ones
business and presents an opportunity to obtain an advantage over competitors
who do not know or use it.  In re Bass,
113 S.W.3d 735, 739 (Tex. 2003) (orig. proceeding).  It is a process or device for continuous use
in the operation of the business and generally relates to the production of
goods.  Trilogy Software, Inc.,
143 S.W.3d at 463 (citing Hyde Corp. v. Huffines,
314 S.W.2d 763, 777 (Tex. 1958)).  To
determine whether a trade secret exists, we weigh six non-exclusive factors:








(1) the extent to which the information is known outside of the
business; 

(2) the
extent to which it is known by employees and others involved in the business;

(3) the
extent of the measures taken to guard the secrecy of the information;

(4) the
value of the information to the business and its competitors;

(5) the
amount of effort or money expended in developing the information; and 

(6) the ease or
difficulty with which the information could be properly acquired or        duplicated by others.

 

In re Bass,
113 S.W.3d. at 740 (citing Restatement of Torts 
757 cmt. b (1939); Restatement (Third) of Unfair
Competition 
39 reporters
n. cmt. d (1995)).  A determination of whether information
qualifies as a trade secret must be made through a comparative evaluation of
all the relevant factors and surrounding circumstances, including the value,
secrecy, and definiteness of the information. Id. at
739.








Consistent with
these first three factors, we recognize that a trade secret must be
secret.  See McClain v. State, 269
S.W.3d 191, 195 (Tex. App.Texarkana
2008, no pet.);  Stewart &
Stevenson Servs., Inc. v. Serv-Tech,
Inc., 879 S.W.2d 89, 96 (Tex. App.Houston
[14th Dist.] 1994, writ denied).  While
absolute secrecy is not required, a substantial element of secrecy must
be demonstrated.  See Trilogy
Software, 143 S.W.3d at 467 (Before
information can be a trade
secret
there must be a substantial element of secrecy.);
Astoria Indus. of Iowa, Inc. v. SNF, Inc., 223 S.W.3d 616, 634 (Tex.
App.Fort
Worth 2007, pet. denied).  A substantial
element of secrecy exists when the information is not generally known or
readily ascertainable by independent investigation.  Trilogy Software, 143 S.W.3d at 467;
see McClain, 269 S.W.3d at 195 (noting that substantial element of
secrecy exists when there would be difficulty in acquiring information except
by use of improper means).  The party
claiming trade-secret status has the burden of establishing secrecy.  Trilogy Software, 143
S.W.3d at 467.

At trial, David
Bouse, former director of human resources for Boeing,
testified that the Lease is not publicly available, such as through Boeings internal or external
websites.  He also testified that the
Lease is kept in a file cabinet in the office of Boeings
facility manager and that access to the Lease within Boeing is limited to
senior staff members in finance and management. With regard to first and second
factors, the undisputed evidence demonstrates that Boeing has not generally
made the Lease information known outside its business and has limited its
availability to certain employees within Boeing.

Also relevant
to the determination of whether the Lease information is secret is the third factor,
the extent of measures taken to guard the secrecy of the information.  See In re Bass, 113 S.W.3d at
740.  A party that fails to take
reasonable precautions to secure the secrecy of its information cannot claim
that the information constitutes a trade secret.  See Phillips v. Frey, 20
F.3d 623, 630-31 (5th Cir. 1994) (explaining that outside any confidential
relationship, one who voluntarily discloses secret information or fails to take
reasonable precautions to secure its secrecy cannot properly claim that
information constitutes trade secret (citing Interox
Am. v. PPG Indus., Inc., 736 F.2d 194, 202 (5th Cir. 1984))).  While information disclosed to another party
does not necessarily lose its secrecy, the disclosure must be made in a manner
that places a duty on the receiving party not to disclose or use the
secret.  Id. at 630 (noting that
owner of trade secret will not lose secrecy by disclosure if he creates duty in
some manner and places that duty upon another not to disclose or use secret).













Bouse testified that Boeing is always very concerned about the
confidentiality of agreements that it enter[s] into, especially where financial
terms are disclosed.  However, it is undisputed that both Boeing
and the Port had access to the Lease information which Boeing claims is a trade
secret, and there is no evidence that Boeing took any reasonable precautions to
prevent the Port from disclosing the Lease information. There is no evidence
that the Port was contractually obligated to Boeing to protect the Lease
information, such as through a confidentiality agreement. Further, the evidence
does not establish, nor has Boeing argued, that the Port had a confidential
relationship with Boeing or any other legal duty to protect the Lease
information.  See Gonzales v. Zamora,
791 S.W.2d 258, 265 (Tex. App.Corpus
Christi 1990, no writ) (noting that trade-secret protection is available even
in absence of express agreement not to disclose materials where confidential
relationship exists);  see also Crim Truck & Tractor Co. v. Navistar Intl
Transp. Corp., 823 S.W.2d 591, 594-95 (Tex. 1992) (recognizing that
contractual relationship does not normally give rise to confidential
relationship, even where evidence of subjective trust).  For example, there is no evidence that Boeing
informed the Port at the time it entered into the Lease that it considered the
Lease information confidential or a trade secret.  See Phillips, 20 F.3d at 632 (noting
that fact finder could have found that defendant knew information disclosed
during negotiations was trade secret and that disclosure was made in
confidence); cf. Hyde Corp., 314 S.W.2d at 777 (noting that
existence of confidential relationship is to be determined in each case, and
viewing picture
as a whole,
trial court concluded that confidential relationship existed).  Rather, the attorney general presented
evidence that the Port gave members of the news media access to the Lease and
that some of the Lease terms, including the range of rent expected to be paid,
were discussed in an article printed in the San Antonio Business Journal.  Further, Terry Britton, senior vice president
of real estate development for the Port, testified that the Ports annual audit financial
reports, containing the amounts that Boeing has paid annually to the Port
under the Lease, are available to the public. Based on this evidence, the
trial court could have reasonably concluded that Boeing failed to take
reasonable precautions to protect its alleged trade secret.

Under the
fourth factor, we consider the value of the information to Boeing and its
competitors.  See In re Bass, 113
S.W.3d at 740.  At trial, Bouse testified that the bidding process for the government
contracts upon which Boeings
work is based is extremely competitive, with much of the overhead dictated by
the federal government.  Bouse also testified that if the Lease information were
released, a competitor could do a
build-up of the total cost of the lease to Boeing, which is a substantial
portion of [Boeings]
overhead expense at Kelly Air Force Base.  According to Bouse,
with this information a competitor could locate
other suitable air fields around the United States, enter into
negotiations with municipalities in those parts of the country and get much more
favorable deals than what we have on the table and put us [at] a competitive
disadvantage in retaining the current work that we have.








However, this
argument fails to take into account the myriad of other factors that might
influence the cost of any lease a competitor might obtain from other
municipalities, such as size and location of the property.  This argument also assumes that lease cost is
the sole determining factor in bids for a government contract.  At trial, Bouse
acknowledged that the overhead rate used in Boeings
government bids includes elements such as utilities, indirect labor, and
management cost, in addition to lease cost. Boeings
bids also include general and administrative corporate allocations, as well as
profits. 
Based on the evidence presented, the trial court could have reasonably
concluded that Boeing failed to establish that the information was of
sufficient value to Boeing and its competitors to constitute a trade secret.

Based on our
review of the record, the evidence fails to conclusively establish that the
Lease information is a trade secret.  See
City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005) (Evidence is conclusive only if
reasonable people could not differ in their conclusions, a matter that depends
on the facts of each case.).  Because Boeing has not shown that the
information it seeks to protect is a trade secret as a matter of law, we are
bound to the trial courts
finding that it is not.  See
McGalliard, 772 S.W.2d at 696 (findings of
fact are binding on appellate court unless contrary is established as matter of
law or there is no evidence to support finding).  Based on this finding, the court did not err
in concluding that trade-secret law does not protect the Lease information from
mandatory disclosure under section 522.022. 
Boeings
first issue is overruled.

 

Information related to
competition or bidding under section 552.104








We now turn to
whether the Lease information is excepted from
disclosure under section 552.104 of the PIA. 
Under this section, information that would give advantage to a
competitor or bidder if released is excepted from
disclosure.  Tex. Govt Code Ann.  552.104(a). Section 552.104 is
a unique PIA exception because it expressly provides that the disclosure
mandate normally applicable to core public information under 552.022 does not
apply.  Id.  552.104(b).  In other words, this exception to disclosure
applies even when the information at issue is core public information, like the
Lease information in this case.  Id.  Boeing argues that the trial court erred in
concluding that (1) Boeing lacks standing to assert section 552.104 as a basis
for withholding the information at issue and (2) that section 552.104 does not
except the information at issue from disclosure.  We first decide the threshold issue of
whether Boeing has standing to assert this exception.

The standing
issue presented in this case is whether the PIA affords a private party, like
Boeing, the right to enjoin a governmental body from disclosing public
information on grounds that it is excepted from
disclosure under section 552.104.[6]  The attorney general contends that the
trial court correctly concluded that Boeing has no right to assert section
552.104.  The attorney general argues
that the exception does not protect the legal interests of third parties like
Boeing. Rather, the attorney general contends, section 552.104 is meant to
protect the governments
purchasing interests and can be waived by the governmental body if not properly
raised.  Section 552.110, which excepts from disclosure trade secrets and proprietary
information, is meant to protect the interests of third parties.[7]  Accordingly, the attorney general argues, any
proprietary interest that Boeing has in the Lease information is properly
asserted under section 552.110, not section 552.104.[8] 








Boeing counters
that the trial courts
conclusion that section 552.104 may not be invoked by a private party is
contrary to the plain and reasonable reading of the statute.  Boeing contends that section 552.104 protects
any information that would give
an advantage to a competitor
without limitation. Since
only private parties have competitors, Boeing reasons, the exception necessarily
protects private interests.








However, even
assuming that section 552.104 protects the interest of private parties, as
Boeing argues, it does not follow that the legislature intended for a private
party to have the right to prohibit a governmental body from disclosing
information on this basis.  In this case,
Boeings
assertion of section 552.104 is premised on the assumption that the government
is prohibited from disclosing information that is excepted
under section 552.104.  For the reasons
set forth below, we find that a plain reading of the PIA shows that section
552.104 is a purely discretionary exception. That is, if section 522.104
applies to informationeven
core public informationthe
exception from disclosure may be waived by the governmental body, unless
disclosure is prohibited
by law
or the information is confidential
under law.  Boeing does not assert that disclosure of the
Lease information is prohibited
by law
or that the Lease information is confidential
under law,
other than trade-secret law, an argument which we have already rejected.  The Port can waive, and in effect has waived,
any claim to withhold the information under section 552.104.  Tex. Govt Code Ann.  552.326 (West 2004).  Because the waiver decision belongs solely to
the governmental body, the trial court did not err in concluding that Boeing
has no right under the PIA to assert section 552.104 to enjoin the Port from
disclosing the Lease information.

When
determining a private litigants rights under a statute, like the PIA, our duty is to
ascertain the legislatures
intent.  See Brown v. De La Cruz,
156 S.W.3d 560, 562 (Tex. 2004); Abbott v. Texas Dept. of Health &
Mental Retardation, 212 S.W.3d 648, 655 (Tex. App.Austin 2006, no pet.).  In construing a statute, ordinarily we are
confined to the plain language of the statute, construing the statute as whole,
as opposed to isolated provisions.  Mid-Century
Ins. Co. v. Ademaj, 243 S.W.3d 618, 621 (Tex.
2007); see State v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002) ([W]e determine legislative
intent from the entire act and not just isolated provisions.).  We presume that the Legislature intended all
provisions of the statute to be effective, with a just and reasonable result. City of Dallas v. Abbott, 304 S.W.3d 380, 384 (Tex. 2010).  We may consider the objective of the statute,
legislative history, and the consequences of a proposed construction.  Tex. Govt Code Ann.  311.023(1), (3), (5) (West
2005).








We also give
due consideration to attorney general decisions in cases involving the PIA,
under which the attorney general is mandated to determine the applicability of
exceptions to disclosure.  Rainbow Grp.,
Ltd. v. Texas Empt
Commn,
897 S.W.2d 946, 949 (Tex. App.Austin
1995, writ denied).  In interpreting
section 552.104, the attorney general has previously ruled that section 552.104
can be waived by a governmental body and, further, is designed to protect the
interests of a governmental body, not a private party.  See Tex. Atty Gen. OR1991-592, 8
(determining that PIA exception 3(a)(4), now section 552.104, can be waived by
governmental body); see also Tex. Atty Gen. OR1998-514, 2 (noting
that PIA exception, now section 552.104, protects government purchasing
interests); Tex. Atty
Gen. OR1988-509, 4 (same).  While these
decisions are not controlling, because the interpretation urged in the
decisions is reasonable when the statute as a whole is considered, we find them
persuasive.  See
City of Dallas, 304 S.W.3d at 384 (noting that attorney generals interpretation of PIA may be
persuasive, though not controlling).

Under the PIA,
a governmental body must make public information available upon request unless excepted under the PIA. 
See generally Tex. Govt Code Ann.  552.101-.1425 (West 2004
& Supp. 2010).  That is, a
governmental body is not required to disclose public information if the
information falls within one or more specific exceptions set forth in the PIA.[9]  See Arlington Indep.
Sch. Dist., 37 S.W.3d at 157 (The
Legislature has established a wide range of exceptions to the Act which permit
governmental entities to withhold certain information from the public.) (emphasis
added).  However, it does not follow that
a governmental body, like the Port, is necessarily prohibited from disclosing
information simply because it is excepted from
required disclosure under the PIA.

Instead, the
plain language of the PIA permits, but does not require, a governmental body to
withhold public information that falls within an exception under the PIA.  This discretion is derived from section
552.007 of the PIA, which states:








[The PIA] does not prohibit a governmental body or
its officer for public information from voluntarily making part or all of its
information available to the public, unless the disclosure is expressly
prohibited by law or the information is confidential under law.

 

 

Tex. Govt Code Ann.  552.007(a) (West 2004).  This section makes clear that a governmental
body may voluntarily disclose any public information, even when not otherwise
required to disclose it, unless such disclosure is prohibited.  See id.; Birnbaum v. Alliance of
Am. Insurers, 994 S.W.2d 770, 776 (Tex. App.Austin 1999, pet. denied)
(explaining that under section 552.007 of the PIA government agency may
release any information not expressly prohibited from release).  The PIA prohibits a governmental body from
disclosing public information only when disclosure is prohibited by law or the information is confidential under law.  See Dominguez v. Gilbert, 48 S.W.3d
789, 793 (Tex. App.Austin
2001, no pet.) (A
governmental body can voluntarily disclose records that it is not required to disclose unless those records are confidential
under law.).
While information that is excepted from disclosure in
some cases may be confidential
under law,
the fact that information is excepted under the PIA does not, in and of itself,
render the information confidential under law. 
Birnbaum, 994 S.W.2d at 776 (explaining that if section 552.122
exception applied to information, the government could reject the exception and
disclose information pursuant to section 552.007); see Cox Tex.
Newspapers, 343 S.W.3d at 122 (Wainwright, J., concurring) (Public
information
may be excepted from disclosure under Subchapter C, or may be prohibited from
disclosure if the information is deemed confidential.
(citing Tex. Govt
Code Ann. 
552.007, .101, .352 (West 2004))). 
Accordingly, the fact that information is excepted
under the PIA does not necessarily prohibit its disclosure by the government.








Further, there
is nothing that indicates that section 552.104 itself
creates a class of information that is confidential
under law.  See Birnbaum, 994 S.W.2d at 776
(finding that section 552.112 under the PIA is a
permissive exception
and explaining that section 552.112, excepting certain information in
governmental reports regarding financial or securities institutions, does not itself create a class of
information that is confidential under law).  Even if we were to interpret section 552.104
broadly, as Boeing suggests, to include any information that would give an
advantage to a private partys
competitor without limitation, there is no indication that such information is
considered confidential under the PIA or any other law.  When the legislature has intended to make
information confidential, it has done so in express terms.  Id. 
For instance, section 552.132 of the PIA expressly makes confidential
certain information regarding crime victims. 
Tex. Govt
Code Ann. 
552.132 (West Supp. 2010).  Similarly,
credit card and debit card information is expressly confidential under the
PIA.  Id.  552.137 (West 2004).  There is nothing in the PIA that suggests
that the legislature intended information excepted
under section 552.104 to be treated as confidential.  Further, there is nothing that would suggest
that information that
would give an advantage to a competitor
is considered confidential under any other law, including statutory
law, constitutional law, or judicial decisions.  See id. 
552.101 (West 2004). 
Therefore, section 552.104 is a discretionary exception which can be
waived by the governmental body.  See Birnbaum, 994 S.W.2d at 776 (finding that section
552.112 is permissive exception that government may waive in its
discretion).  Absent a showing
that disclosure of the Lease information is specifically prohibited by law or confidential
under law,
it is within the Ports
discretion to waive any claim to withholding under section 552.104. 








Neither the
trial courts
findings nor evidence in the record would support the conclusion that
disclosure of the Lease information is prohibited
by law
or that the information is confidential
under law.  In this case, the trial court did not find
that disclosure of the Lease information is prohibited by law or confidential
under law.  Rather, the court concluded
that no
other law, including common law trade secrets, expressly makes the information
confidential.  On appeal, Boeing does not contend that
disclosure of the Lease information is prohibited by law or confidential under
law, aside from trade secret law. 
Therefore, it was within the Ports
discretion to waive any claim to withholding under section 552.104.[10]  Boeing has no right under the PIA to prohibit
the disclosure of public information on grounds that it is excepted
from disclosure under section 552.104.[11]








Boeing asserts
that the plain language of the exception protects any information that would give advantage to a
competitor or bidder
and, since the government has no competitors, the exception can only reasonably
be construed as protecting private parties. 
While it may be true, at least to some degree, that the government is
not a competitor or a bidder, it does not follow that the government has no
interest in protecting competitive bidding on government contracts.  While a disclosed bid might certainly give a
bidder unfair advantage, i.e., the opportunity to underbid, the government has
an interest in maintaining the integrity of the bidding process, which is
furthered by section 152.104.  See,
e.g., Orion Research, Inc. v. EPA, 615 F.2d 551, 554 (1st Cir. 1980)
(holding that disclosure of bid to competitor under Freedom of Information Act
would have chilling
effect
on willingness of potential bidders to submit bids in future).  In any event, regardless of any private
interest in protecting the material, the broad interpretation urged by Boeing
ignores the import of section 552.007.  See
City of Dallas, 304 S.W.3d at 384 (We
presume that the Legislature intended all provisions of a statute to be
effective, and that it intended a just and reasonable result.); see also Birnbaum, 994
S.W.2d at 776 (rejecting interpretation that PIA section 552.007 prohibits release
of public information in which there is third-party property or privacy
interest).  Based on the plain language
of the statute as a whole, the PIA cannot reasonably be interpreted in a manner
that would permit Boeing to prohibit disclosure of the Lease information.








Boeing cites
several federal cases for the proposition that, under an analogous provision in
the Freedom of Information Act (FOIA), federal courts have prohibited the
disclosure of similar information. 
See Canadian Commercial Corp. v. Dept of the Air Force, 514 F.3d
37, 39 (D.C. Cir. 2008) (holding line-item pricing information in government
contract was exempt from disclosure); McDonnell Douglas Corp. v. Dept
of the Air Force, 375 F.3d 1182, 1194 (D.C. Cir. 2004) (same); McDonnell
Douglas Corp. v. NASA, 180 F.3d 303, 305 (D.C. Cir. 1999) (same). Because
the Texas Legislature modeled the PIA after FOIA, federal precedent is
persuasive, particularly where the statutory provisions mirror one another.  Texas Comptroller of Pub.
Accounts v. Abbott, ___ S.W.3d ___, No. 08-0172, 2010 Tex. LEXIS 890, at
*16 (Tex. Dec. 3, 2010). However, we do not find the cases cited by Boeing
persuasive for several reasons.








First, the
federal cases cited by Boeing interpret and apply Exemption 4 of FOIA, which
does not mirror section 552.104. 
Exemption 4 protects from disclosure trade
secrets and commercial or financial information obtained from a person and
privileged and confidential
and therefore is nearly identical to section 552.110 of the PIA, not
section 552.104.  5 U.S.C.A.  552(b)(4)
(West 2007).  Further, these cases do not
support the proposition that a private party may necessarily preclude a
governmental body from disclosing information that is excepted
under the PIA.  See Canadian Commercial Corp., 514 F.3d
at 39 (noting that Trade Secrets Act requires agencies to withhold information
under Exemption 4); McDonnell Douglas Corp., 375 F.3d at 1185 (Exemption 4 does not itself
prohibit an agency from disclosing commercial or financial information; it
provides only that an agency is not compelled to disclose such information.); McDonnell Douglas Corp.,
180 F.3d at 305 (noting that if information falls within Exemption 4, it simply means that the
government is not compelled to disclose it).  Rather, these cases are consistent with
United States Supreme Courts
recognition, more than thirty years ago, that Congress did
not design the FOIA exemptions to be mandatory bars to disclosure. 
Chrysler Corp. v. Brown, 441 U.S. 281, 293
(1979).[12]  The Supreme Court unanimously held that a
private party has no right under the FOIA to enjoin agency disclosure of public
information.  Id. at 294  (We conclude that Congress did
not limit an agencys
discretion to disclose information when it enacted the FOIA.  It necessarily follows that the Act does not
afford Chrysler any right to enjoin agency disclosure.).

Boeing also
cites two cases from other states, Arkansas and Kentucky, which Boeing asserts
have provisions similar or identical to section 552.104 of the PIA.  In Marina Management Services, Inc. v.
Commonwealth of Kentucky, a private party asserted that audited financial
reports submitted to the Kentucky government were prohibited from
disclosure under the Kentucky Open Records Act. 906 S.W.2d
318, 319 (Ky. 1995).  The Kentucky
Supreme Court held that the government could not disclose the requested
information.  However, the statutory
provision at issue in that case exempted from disclosure records confidentially disclosed
to it, generally recognized as confidential or proprietary, which if openly
disclosed would permit an unfair commercial advantage to competitors of the
entity that disclosed the records.  Ky. Rev. Stat. Ann.  61.878(1)(c)(1) (LexisNexis 2011). 
This provision is analogous to section 552.110 of the PIA, not section
552.104.  Further, the Kentucky court
held that the records at issue were deemed confidential. Id.  The issue before this Court is whether a
private party may assert section 552.104 in the absence of a finding that the
information is confidential under law. We do not find this Kentucky
case instructive on this issue.








Similarly, the
Arkansas Supreme Court held that a proposal for a contract with
the Arkansas Department of Finance and Administration was excepted from disclosure under the Arkansas Freedom of
Information Act.  Arkansas
Dept
of Fin. & Admin. v. Pharmacy Assocs., 970 S.W.2d 217, 221 (Ark.
1998).  While the provision in that case
is identical to section 552.104, the issue in the case was whether the state
agency, not a private party, could claim the exception. See id. at 218 (The
question in this case is whether a state agency can claim the
competitive-advantage exception under the Arkansas Freedom of Information Act .
. . on behalf of the person who supplied the information.).  Further, the information requested was bid
information submitted for purposes of obtaining a government contract.  Id. at 220.  The
court noted that the contract is re‑bid every two years and competitors
could use the information to improve their competitive position.  Id. 
That concern is not applicable in this case.

Boeings assertion that the Port is
prohibited from releasing information that falls within the scope of Section
552.104 is contrary to the plain reading of the statute as whole.  Under the plain language of the PIA, section
552.104 is a discretionary exception, which may be waived by the governmental
body unless disclosure is prohibited
by law
or the information is confidential
under law.  In this case, there are no trial court
findings that would support the conclusion that disclosure of the Lease
information is prohibited
by law
or that the Lease information is confidential
under law, 
nor is there any evidence that would support such findings.








Accordingly, we
hold that the trial court did not err in concluding that Boeing does not have
standing to assert section 552.104 to prohibit the Port from disclosing the
Lease information. We overrule Boeings
second issue on appeal.  In light of this
holding, we do not address Boeings
third issue, whether the Lease information falls within the scope of section
552.104.  See Tex. R. App. P. 47.1
(courts of appeal must hand down opinions that are as brief as possible while
addressing those issues necessary to final disposition of appeal).

 

CONCLUSION

Because the
trial court did not err in concluding that the Lease information must be disclosed
under section 552.022(a)(3), we affirm the trial courts
judgment.

 

__________________________________________

Diane M.
Henson, Justice

Before Chief Justice Jones, Justices Pemberton and
Henson;

  Concurring
Opinion by Justice Pemberton

 

Affirmed

 

Filed:  
March 9, 2012











[1] The background facts are based
on the undisputed testimony and exhibits from the trial on the merits.





[2]  Boeing asserts that Silvas
is a disgruntled former employee.  Even
if true, this information is irrelevant; the PIA prohibits inquiry into the
motives of the party requesting the release of information.  See Tex. Govt Code Ann.  552.222 (West Supp. 2010); A&T
Consultants v. Sharp, 904 S.W.2d 668, 676 (Tex. 1995) (noting that the PIA precludes
factual inquiry into requesting partys
intentions).





[3] Upon
review of the Lease information by the United States Department of Homeland
Security, the parties have stipulated that portions of the Lease information
are confidential under the Critical Infrastructure Information Act of
2002.  6 U.S.C.A.  131-134 (West 2007).  Accordingly, those portions of the Lease have
been redacted and are not at issue in this case.





[4]  Boeing sent written notice of the suit to Silvas, as required by the PIA.  See Tex. Govt Code Ann.  552.325(a), (b) (West Supp.
2010).  Though entitled to do so, Silvas did not intervene in the suit.  See id.





[5]  At trial, Boeing also raised sections 552.101
and 552.110.  See Tex. Govt
Code Ann.  552.101
(excepting from disclosure information considered to be confidential by law),
.110 (West 2004) (excepting from disclosure trade secrets and commercial and
financial information that would cause substantial competitive harm).  Boeing has not raised these grounds on
appeal.  See Tex. R. App. P. 38.1(i) (requiring appellants
brief to state concisely all issues or points presented for review).





[6]  While the parties present their arguments in
terms of standing, we consider those arguments in the context of whether Boeing
has a statutory right to the relief it seeks. 
See Dubai Petroleum Co. v. Kazi, 12
S.W.3d 71, 76 (Tex. 2000) (The
right of a plaintiff to maintain a suit, while frequently treated as going to
the question of jurisdiction, has been said to go in reality to the right of the
plaintiff to relief rather than to the jurisdiction of the court to afford it. (citing
21 C.J.S. Courts 
16, at 23 (1990)). 





[7]
Section 552.110 excepts from disclosure (1) a trade
secret obtained from a person and privileged or confidential by statute or
judicial decision and (2) commercial or financial information for which it is
demonstrated based on specific factual evidence that disclosure would cause
substantial competitive harm to the person from whom the information was
obtained.  Tex. Govt Code Ann.  552.110 (West 2004).





[8]  The attorney general suggests that section
552.110 of the PIA may be asserted by a private party to prohibit
disclosure.  See, e.g., Tex.
Atty
Gen. OR1990-552, 2 (noting that PIA exception protecting trade secrets and
certain financial information in section 3(a)(10), now section 552.110,
protects third-party interests); Tex. Atty Gen. OR1988-514, 2-3 (noting
that same PIA exception parallels exemption 4 of Freedom of Information Act and
protects third-party interests).  This
Court has previously recognized that information that is a trade secret or confidential
or privileged information under section 552.110
would be prohibited from disclosure under section 552.007.  See Tex. Govt Code Ann.  552.007 (West 2004)
(prohibiting disclosure of information when prohibited
by law or the information is confidential under law);
Birnbaum v. Alliance of Am. Insurers, 994 S.W.2d 766, 776 (Tex. App.Austin
1999, pet. denied).  However, although
Boeing asserts that the Lease information is a trade secret, Boeing has not
otherwise raised section 552.110 on appeal. 
Further, the trial courts
factual findings would not support the application of section 552.110 in this
case. Specifically, the court found that the Lease information is not a trade
secret and that disclosure of the Lease information would not cause substantial
competitive harm to Boeing.  See Tex. Govt Code Ann.  552.110.





[9]  However, if the information is considered
core public information under section 522.022 it must be disclosed unless expressly confidential under law other than the PIA.  Tex. Govt Code Ann.  552.022 (West 2004).





[10]  The Port has, in effect, waived the exception
and chosen to release the information, having never asserted at any stage of
this dispute that it wished to withhold it. 
See Tex. Govt
Code Ann. 
552.301 (providing that governmental body must request determination from
attorney general about whether information it wishes to withhold is excepted from
disclosure under specific exceptions), 552.324 (West Supp. 2010) (providing
that governmental body wishing to withhold information and challenge decision
by attorney general must file suit within thirty days; otherwise, it must
comply with attorney generals
decision).  In fact, the Port, by filing
a general denial, has affirmatively taken the position that Boeing is not
entitled to relief.

 





[11]  Section 552.325 provides that a governmental body, officer for
public information, or other person or entity that files suit seeking to
withhold information from a requestor may not file suit against the person
requesting the information.
 Tex. Govt Code Ann.  552.325 (West Supp. 2010).  While this provision acknowledges that a
private party may in certain instances file suit to prevent the disclosure of
information, there is no indication that the legislature in enacting section
552.325 intended to confer a right upon private parties to prohibit disclosure
of public information in cases where the exception asserted otherwise allows
for voluntary disclosure by the governmental body.  Instead, this section simply provides that in
those cases in which a party seeks to prohibit disclosure on otherwise
appropriate grounds, such as when a private party asserts that disclosure is expressly prohibited by law or
the information is confidential under law,
the requestor may not be named as a defendant in the suit.  Id.; see Tex. Govt
Code Ann. 
552.007.





[12]
Federal cases brought by private parties claiming exemptions under the Freedom
of Information Act (FOIA), such as the ones cited by Boeing, are procedurally
brought under the Federal Administrative Procedure Act (APA) and challenge the
agencys
decision to release the information as arbitrary and capricious or not in accordance
with the law under the APA.  See, e.g., United Techs. Corp.
v. U.S. Dept
of Defense, 601 F.3d 557, 562 (D.C. Cir. 2010).