**BROWNSTEIN ZEIDMAN AND SCHOMER, Plaintiff,**

v.

**DEPARTMENT OF the AIR FORCE, Defendant.**

Civ. A. No. 90–1582.

United States District Court, District of Columbia.

Dec. 20, 1991.

Bert Rein, Christine E. Lanzon, Brownstein, Zeidman & Schomer, Washington, D.C., for plaintiff.

Charles L. Hall, Asst. U.S. Atty., Washington, D.C., for defendant.

Tami Lyn Azorsky, McKenna & Cuneo, Washington, D.C., for intervenor.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiffs brought this action to compel the Air Force to produce certain documents pursuant to the Freedom of Information Act, 5 U.S.C. § 552. The documents all relate to a contract for the purchase of computers that the Air Force made in 1988. Since no genuine issue of material fact remains in dispute, summary judgment is appropriate in this action.

### A. *Factual Background*

In February of 1987, the Air Force solicited proposals for a computer procurement contract. In return, it received multiple bids, and it ultimately selected the offer made by AT & T. A contract was then drafted and later modified. In July of 1989, the plaintiff filed a FOIA request with the Air Force seeking access to a number of documents that pertained to the selection of AT & T's offer and to the contract awarded. To date, the Air Force has produced a significant number of the documents originally requested by plaintiff. The parties agree that only five documents remain in dispute. They are as follows:

(1) The modified unit prices listed in the "B Tables" of the Air Force Contract with AT & T.

(2) The Source Selection Advisory Committee Report (SSAC Report).

(3) An Amendment to the Source Selection Plan (SSP Amendment).

(4) An Attachment to the Proposal Evaluation Guide (PEG Attachment).

(5) Portions of the Source Selection Evaluation Board Report (SSEB Report).

The Air Force refuses to produce the first document on the grounds that it is protected from disclosure by FOIA exemption 4, 5 U.S.C. § 552(b)(4), the exemption for confidential and financial information obtained from private parties. The Air Force refuses to produce the other four documents on the grounds that they are protected from disclosure by FOIA exemption 5, 5 U.S.C. § 552(b)(5), the statute's version of the deliberative process privilege.

The Court will now proceed to make a decision about disclosure for each document.

### B. *The Modified Unit Prices*

■ AT & T provided the Air Force with "B Tables" that were attached to the purchase contract for the computers. The tables break down the computers into their component parts and show a unit price for each component. The Air Force produced the "B Tables" from the contract in their original form. It also produced the later version of the "B Tables" reflecting modifications to the contract; however, in this version, it redacted the unit prices. The Air Force claims that the unit prices are confidential financial information and that their release would do substantial harm to AT & T; hence, they are protected from disclosure by FOIA exemption 4. Counsel

for AT & T asserted the same position in oral argument before the Court.

Obviously AT & T prefers not to have this information disclosed, but the plaintiff is legally entitled to receive it. In an earlier case, AT & T sought to enjoin the General Services Administration from releasing AT & T's successful bid proposal on a government procurement contract for a federal telecommunications system. They offered the same objection they do here: release of the unit prices would allow their competitors to calculate AT & T's profit margin and consequently underbid AT & T.[1] *See AT & T v. General Services Administration*, 627 F.Supp. 1396, (D.D.C. 1987) *rev'd on other grounds* 810 F.2d 1233 (D.C.Cir.1987). Judge Oberdorfer rejected AT & T's argument and permitted the documents to be released. He noted that disclosure of negotiated contract prices is a cost of doing business with the government. 627 F.Supp. at 1403 *citing Racal–Milgo Government Systems Inc. v. Small Business Administration*, 559 F.Supp. 4, 6 (D.D.C.1981). Furthermore, he concluded that the claim that competitors could deduce the profit margin from the unit price was highly speculative. 627 F.Supp. at 1402–3.

■ Exemption 4 does not apply where the damage that the government contractor will suffer as a result of the release of confidential information is only speculative. *See National Parks and Conservation Association v. Kleppe*, 547 F.2d 673, 680 (D.C.Cir.1976) ("Conclusory and generalized allegations are indeed unacceptable as a means of sustaining the burden of non-disclosure under the FOIA....") As the Fourth Circuit noted in *Acumenics Research & Technology v. Department of Justice*, 843 F.2d 800, 808 (4th Cir.1988) in order to calculate the "multiplier" used by a government contractor, a competitor would have to know a great deal about labor costs. That information is not available with any degree of certainty. The *Acumenics* court upheld the Department of Justice's decision to release pricing information that Acumenics had submitted in a contract proposal.[2] The concerns expressed by AT & T in the case before this Court are equally speculative.[3] Accordingly, the Air Force will be ordered to release the modified unit prices that plaintiff seeks.

## C. The SSAC Report

■ The Declaration of Stephen Meehan,[4] filed with the Court on December 20, 1990, states that the

> Source Selection Advisory Council report is a comparative analysis of the findings and rating results of the SSEB as they relate to the proposals submitted ... and evaluative criteria which were specified in the solicitation document. *Declaration* at 16.

In the defendant's answer to Interrogatory No. 6 of the plaintiff's first set of interrogatories, defendant states that the SSAC

---

1. Counsel for AT & T represented to the Court during the hearing on cross-motions for summary judgment that the contract does not compel the Air Force to buy all of the laptop computers it needs from AT & T; rather it commits AT & T to make available *computers with specified features at specified prices.* AT & T claims that it will suffer substantial losses if competitors can determine the unit prices. Other companies will be able to undercut AT & T's price because those competitors will be able to determine AT & T's actual cost for the goods while AT & T will be locked into one price. This argument, however, depends on the assumption that competitors will be able to calculate AT & T's profit margin.

2. Acumenics made a successful bid to provide litigation support services to the Department of Justice.

3. *See* Transcript of November 21, 1991 hearing at 30. Counsel for AT & T asserts that by "looking at" the information sought by plaintiff, competitors can calculate the profit margin. Counsel does not explain how a competitor would get other necessary information about labor costs, supply costs or other factors that would affect these prices.

4. Mr. Meehan is a contracting officer in the Directorate of Contracting, Air Force Computer Acquisition Center, Computer Systems Division, Air Force Communication Command, United States Air Force. He is responsible for processing FOIA requests in connection with these computer contracts.

report contains the "bases and reasons" for the Air Force's decision to select AT & T's proposal. The Air Force claims that it need not disclose this document because of the deliberative process privilege encompassed in FOIA exemption 5, 5 U.S.C. § 552(b)(5).

Plaintiff claims that the SSAC Report has been incorporated into the final decision and should therefore be disclosed. To support this argument, plaintiff cites *American Society of Pension Actuaries v. IRS*, 746 F.Supp. 188 (D.D.C.1990) in which the Court ordered the IRS to disclose the assumptions and calculations used to generate an estimated revenue yield from a shift in audit resources. That case, however, differs significantly from the one presented here. In *ASPA*, the government was compelled to disclose numerical calculations, not evaluative reasoning expressed in words rather than numbers.

Furthermore, it is not entirely clear that the SSAC report was incorporated in the agency's final decision. The Source Selection Decision Document states that

> After examining the Source Selection Advisory Council findings and analyzing the evaluation results, I select AT & T based on my integrated assessment of the proposals against the evaluation criteria listed in the solicitation. Proposals were evaluated against the following three evaluation criteria listed in order of importance: Technical, Cost and Management.

As the Court reads the statement above, the Source Selection Authority merely states that it reviewed the SSAC report and used it in reaching its conclusion. It does not appear to incorporate the SSAC report. Actually, the document goes on to give very specific reasons for choosing the AT & T proposal, e.g., the use of plug-in cards, an "exceptional" office automation system, successful demonstration results, and easy integration with other government equipment. *See* Appendix to Plaintiff's Cross–Motion for Summary Judgment at Tab 10. Although these criteria may have been distilled from the SSAC report, they are presented explicitly and there is no sugges-

tion that the SSAC report contains any additional criteria. Rather, the Court infers from this statement that the SSAC report contains the kind of predecisional evaluation that is intended to be protected by Exemption 5. Accordingly, the SSAC report shall be withheld.

### D. *Amendment to the SSP*

The Air Force adopted a Source Selection Plan to assist it in choosing a contract proposal. It later amended that plan to change one of the evaluative criteria. Plaintiff claims not to have received the amendment to the SSP. The Air Force claims in its letter to the Court dated November 29, 1991, that the SSP already released to plaintiff is the amended SSP and that the original SSP cannot be located. However, in the Vaughn Index provided to plaintiff, the Air Force did list page 13 of this document as "denied."

■ The Air Force bears the burden of justifying nondisclosure. It has offered no legal basis for withholding page 13. The Court will order the Air Force to check their records and verify to the Court that page 13 does not exist and that the Vaughn Index was in error. If page 13 does exist, it must be produced because no basis has been offered for withholding it.

### E. *Attachment to the PEG*

■ The Air Force has provided the narrative text from the Program Evaluation Guide (PEG) but has redacted all the sections that describe the standards used. Again, the Air Force claims it need not produce these portions because of FOIA Exemption 5.

Defendant in this case has attempted to argue that "the withheld material ... consists entirely of the opinions and recommendations of Air Force evaluation team personnel about proposals submitted in response to the [computer procurement contract] requirements." *Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment* at 5. The PEG criteria, however, are not opinions or recommendations. They are standards.

Defendant has also argued in its letter of November 29, 1991 to the Court, that releasing this information would hurt future government contracting because the same criteria will be used in the future. The government likens disclosure to giving out the test questions in advance. This argument may sound reasonable, but it does not follow the contours of FOIA exemption 5. The government does need latitude to have full and frank discussions prior to making decisions on items like government contracts. However, disclosing the standards used by the government will not inhibit anyone's candor because the standards are not presented as the opinion of a particular individual.

The Court does not accept the defendant's argument here. In *Professional Review Organization of Florida v. Department of Health and Human Services*, 607 F.Supp. 423 (D.D.C.1985), Judge Hogan ordered the Department of Health and Human Services to produce the evaluative criteria used in rating professional review organizations for purposes of awarding a government contract. He allowed the evaluations themselves to be withheld as predecisional material covered by FOIA exemption 5, however he did not believe that the standards used for evaluation fell within the scope of the exemption. I believe the same logic applies here. Consequently, I will order the Air Force to disclose this material.

### F. *SSEB Report*

The SSEB Report itself states as follows: This report provides the Source Selection Advisory Council with the analysis and findings of the Source Selection Evaluation Board in the review of six proposals for the [computer procurement contract]. Tab 8 at page 1.

The Air Force has redacted portions of this report which it claims describe its negotiating strategy.[5] Plaintiff claims that portions of the redacted material which are purely factual or which have already been shared with people outside the agency should be disclosed. It specifies those portions in its memorandum.

■ While FOIA exemption 5 does protect intragovernmental deliberations, it does not cover negotiations between the government and outside parties. *See Mead Data Central v. U.S. Department of the Air Force*, 566 F.2d 242 (D.C.Cir.1977). In that case, the Court said,

[T]he Air Force's internal self-evaluation of its contract negotiations, including discussion of the merits of past efforts, alternatives currently available, and recommendations as to future strategy, fall clearly within [the deliberative process privilege]. Information about the "deliberative" or negotiating process outside the agency, between itself and an outside party, does not. *Id.* at 257.

The Court required the government to disclose a running summary of all the offers and counter-offers made between the Air Force and the West Publishing Company.

As far as the SSEB report is concerned, it appears that the redacted materials are not simply offers and counter-offers nor are they merely factual. By the same token, they also do not seem to include much in the way of negotiating strategy. Plaintiffs seek section 2, Tab 2A, Attachment 1; section 2, Tab 2B, pages 4–6; and section 5, Tabs 5A–5F. *See Appendix to Plaintiff's Cross–Motion for Summary Judgment* at Tab 8 (the redacted version of the SSEB is at this Tab). The SSEB Report says that Section 2 "provides a summary of proposal findings for each major technical/management category of validation." Page 1. Section 5 "provides negotiation results." Page 2.

■ The first item, section 2, Tab 2A, Attachment 1, is labeled "Component Supplied by Vendor." This document does not appear to contain the kind of negotiating strategy that the Air Force seeks to protect. Rather, it does appear to contain

---

5. In its Memorandum of Points and Authorities, the Air Force claimed that releasing the information in the SSEB report would lead to confusion about the basis for the ultimate selection of an offer. *Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment* at 5.

factual information only and hence should be disclosed.

■ The second item, section 2, Tab 2B, pages 4–6, is part of a report on the results of a live test demonstration performed using the products of the various offerors. The redacted pages are on the subject of "Verification" under the testing criteria. These materials do not appear to reflect any negotiating strategy but instead appear to contain predecisional evaluations of the various offers based on the performance of the products in the testing. Exemption 5 protects predecisional documents of this sort; therefore the Court will order these pages withheld.

■ The third item, section 5, Tabs 5A–5F, contains six summaries of negotiations with six different vendors. As was true in *Mead Data Central,* negotiations between the government and non-government parties are not protected by Exemption 5; however, these documents are distinguishable from the ones ordered produced in that case. These are not just running lists of offers and counteroffers. These documents are summaries, meaning that they reflect the thoughts and impressions of the government personnel who drafted them and edited them into the current form. Even if the summaries contain very little interpretation of the underlying negotiations, by their nature, summaries are not simply the facts themselves. Government personnel need to be able to write such summaries freely and candidly. Other agency personnel do not have time to review all the factual information available in regard to a particular decision, and they need to rely on the judgment of their colleagues who are responsible for paring that information down and presenting it in a streamlined form. It would inhibit the free flow of information within an agency if staff had to worry that the choices they make about the significance of particular information, as reflected in the substance of negotiation summaries they write, were to be disclosed and scrutinized. Therefore, the Court will order these twenty-eight pages withheld.

### G. *Conclusion*

To summarize the decisions of this Court, the following documents are to be produced:

(1) The modified unit prices listed in the "B Tables" of the Air Force Contract with AT & T.

(2) Attachment to the Proposal Evaluation Guide (PEG Attachment).

(3) Source Selection Evaluation Board (SSEB) Report, section 2, Tab 2A.

The following documents are to be withheld:

(1) The Source Selection Advisory Committee Report (SSAC Report).

(2) SSEB Report, section 2, Tab 2B and section 5, Tabs 5A–5F.

Accepting the representation of the Air Force as true, the Court believes that no separate amendment to the Source Selection Plan exists to be produced. However, the Air Force is obligated to confirm this information and verify that the Vaughn Index was in error.