# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 25, 2007          Decided January 29, 2008

No. 06-5310

CANADIAN COMMERCIAL CORPORATION AND
ORENDA AEROSPACE CORPORATION,
APPELLEES

v.

DEPARTMENT OF THE AIR FORCE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01189)

*Oliver W. McDaniel*, Assistant U.S. Attorney, argued the cause for appellant. With him on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Kristen E. Ittig* argued the cause for appellees. With her on the brief was *Stuart W. Turner*.

Before: GINSBURG, *Chief Judge*, and TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

Concurring opinion filed by *Circuit Judge* TATEL.

GINSBURG, *Chief Judge*: Canadian Commercial Corporation and Orenda Aerospace Corporation (hereinafter collectively CCC) brought this "reverse" Freedom of Information Act case to prevent the Air Force from releasing line-item pricing information in CCC's contract to provide services to the Air Force. The district court enjoined the release and, for the reasons set forth below, we affirm its judgment.

## I. Background

The facts are fully set forth in the thorough opinion of the district court. 442 F. Supp. 2d 15, 17-27 (2006). To summarize briefly, in 2002 CCC and the Air Force signed a three-year contract, which the Air Force had the option to extend for up to four more years, for CCC to repair, overhaul, and modify J85 turbojet engines. In 2003 Sabreliner, which had bid unsuccessfully for the job, filed a FOIA request for a copy of the contract. CCC objected, contending the line-item prices as well as certain hourly labor rates listed in the contract constituted trade secrets. After the Air Force issued a Decision Letter in which it rejected CCC's contentions, CCC filed suit in the district court to enjoin disclosure of the information. *Id.* at 22. Applying our decision in *McDonnell Douglas Corp. v. Air Force*, 375 F.3d 1182 (2004), that court entered a summary judgment holding the decision of the Air Force was arbitrary and capricious insofar as it concluded the line-item prices were not trade secrets; the court enjoined the Air Force from disclosing those prices, 442 F. Supp. 2d at 41, but not the hourly labor rates. *Id.* at 37 n.10. The Air Force alone appealed to this court.

## II. Analysis

We review the district court's grant of summary judgment *de novo*. *McDonnell Douglas v. Air Force*, 375 F.3d at 1186. The underlying Decision Letter issued by the Air Force must be set aside if and only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Exemption 4 of the Freedom of Information Act protects "matters that are ... trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Commercial or financial information obtained from a person involuntarily "is 'confidential' for purposes of the exemption if disclosure [would either] ... impair the Government's ability to obtain necessary information in the future; or ... cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974); *see also Critical Mass Energy Project v. NRC*, 975 F.2d 871, 880 (D.C. Cir. 1992) (en banc) (adhering to *National Parks* with regard to commercial or financial information involuntarily submitted to the Government). We have long held the Trade Secrets Act, 18 U.S.C. § 1905, a criminal statute that prohibits Government personnel from disclosing several types of confidential information unless "authorized by law," is "at least co-extensive with ... Exemption 4 of FOIA." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987). The upshot is that, unless another statute or a regulation authorizes disclosure of the information, the Trade Secrets Act requires each agency to withhold any information it may withhold under Exemption 4 of the FOIA. *Bartholdi Cable Co., Inc. v. FCC*, 114 F.3d 274, 281 (D.C. Cir. 1997). A person whose information is about to be disclosed pursuant to a FOIA request may file a "reverse-FOIA action" and seek to enjoin the Government from disclosing it. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 317-18 (1979).

In two recent reverse-FOIA cases, we held the Air Force was arbitrary and capricious in concluding disclosure of line-item pricing information in a government contract would not cause "substantial competitive harm" to the contractor. *McDonnell Douglas v. Air Force*, 375 F.3d at 1190; *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 307 (D.C. Cir. 1999). The Air Force nevertheless contends we have never decided whether line-item pricing information is subject to Exemption 4 in the first place, and proposes we hold such information categorically excluded from Exemption 4 and therefore subject to disclosure.

Contrary to the contention of the Air Force, it is the law of this circuit that line-item prices do come within Exemption 4. In *McDonnell Douglas v. Air Force* we stated:

> We recoil ... from the implication ... of a per se rule (or at least a strong presumption) that all constituent pricing information -- as opposed to the bid price itself -- is to be disclosed; such a rule would be squarely at odds with the protection we have always understood Exemption 4 to provide for such pricing information.

375 F.3d at 1192. Similarly, in *McDonnell Douglas v. NASA*, after noting "McDonnell Douglas has shown ... that it is likely to suffer substantial competitive harm" if NASA releases its pricing information, we stated that "under present law, whatever may be the desirable policy course, appellant has every right to insist that its line item prices be withheld as confidential." 180 F.3d at 307. We reaffirm today what we have held twice before: Constituent or line-item pricing information in a Government contract falls within Exemption 4 of the FOIA if its disclosure would "impair the government's ability to obtain necessary information in the future" or "cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks*, 498 F.2d at 770.

Even if the law of the circuit were unsettled, we would not find the arguments advanced by the Air Force convincing. Its primary contention is that the Congress must not have intended Exemption 4 to cover line-item prices in Government contracts because the FOIA was intended to broaden the array of information to which citizens have access and the Air Force regularly disclosed such pricing information prior to enactment of that statute -- indeed, we are told, it was then required to do so under its procurement regulations.

Our interpretation of the FOIA would not necessarily be affected even if the Air Force could document these assertions of historical fact. Although the general purpose of the FOIA was indeed to make it easier for the public "to be informed about what [its] government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773 (1989) (internal quotation marks omitted), it does not follow that a specific exemption in the FOIA may not be understood to have diminished public access to a particular type of information if that is what its terms require.

Furthermore, in the Decision Letter here under review, the Air Force provided no empirical support for its historical assertions. Instead, it cited inconclusive passages from the legislative history of the FOIA, a House Report written years before its enactment, and procurement regulations that were superseded by the Federal Acquisition Regulation in 1984. In its brief, the Air Force blithely explains away its dearth of historical support with the non-sequitur that "[b]y 1962, the disclosure of contract unit prices was the norm. Consequently, the administrative record does not discuss this issue." As the district court correctly summed up the situation:

> Quite simply, the record is devoid of any evidence that the
> Air Force has actually disclosed this type of information, as
> it claims, on a consistent basis .... Instead of merely

asserting an alleged disclosure practice based on a novel interpretation of the history of procurement regulations and FOIA, the Air Force needed to provide evidence of other situations in which similar information has been routinely released. The Court need not accept the Air Force's conclusory statement of what its practice has been, or of what it believes the law allows, without any evidence or support that the practice has actually been followed.

442 F. Supp. 2d at 30-31 (citation omitted). With respect to this passage, the Air Force claims the district court improperly shifted the burden of persuasion to it, but that is not correct. The court imposed only the burden of production upon the Air Force as the party in possession of the evidence about its own practices. *See McDonnell Douglas v. Air Force*, 375 F.3d at 1191 & n.5. The burden of persuasion properly remained with the plaintiff.

The Air Force marshals two district court cases endorsing its proposed per se rule of disclosure of pricing data, *Brownstein Zeidman and Schomer v. Air Force*, 781 F. Supp. 31, 33 (D.D.C. 1991), and *AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*, 627 F. Supp. 1396, 1403 (D.D.C. 1986), *rev'd on other grounds*, 810 F.2d 1233 (D.C. Cir. 1987) (per curiam), but both antedate our decisions in *McDonnell Douglas v. NASA* and *McDonnell Douglas v. Air Force*. The Air Force also cites three cases from other circuits but they are inapposite to its point. *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1323 (Fed. Cir. 2003), concerned only whether information that had already been disclosed to the public came within Exemption 4. Although *Pacific Architects & Engineers Inc. v. Dep't of State*, 906 F.2d 1345, 1347-48 (9th Cir. 1990), and *Acumenics Research & Technology v. Dep't of Justice*, 843 F.2d 800, 807-08 (4th Cir. 1988), each upheld an agency's decision to disclose line-item prices, neither established a per se rule that such information does not come within Exemption 4; rather, in each

case the court assumed the *National Parks* analysis applied but concluded the contractor had not shown that disclosure would, as claimed, enable a rival to reverse-engineer competitively sensitive information. Beyond a general paean to the benefits of public disclosure, therefore, the Air Force has given us nary a reason to believe pricing information that, if disclosed, would work a substantial competitive harm, should nonetheless be categorically excluded from Exemption 4.[*]

The Air Force next contends that even under the analytical framework of *McDonnell Douglas v. NASA* and *McDonnell Douglas v. Air Force*, its decision to disclose the pricing information in this case was not arbitrary or capricious. As noted above, in those cases we concluded that for the purpose of Exemption 4 we must evaluate line-item prices as we would any other commercial or financial information, that is, under the *National Parks* standard: If the information was submitted to the Government involuntarily and if its disclosure would either "impair the government's ability to obtain necessary information in the future" or "cause substantial harm to the competitive position of the person from whom the information was obtained," then it comes within Exemption 4 of the FOIA. 498 F.2d at 770. We first address the conclusion in the Decision Letter that disclosure of the information would not cause substantial competitive harm to CCC.

In its letter of objection, CCC claimed disclosure of its pricing information would cause it competitive harm by enabling rivals to undercut its prices in bidding for option-year work. In the Decision Letter, the Air Force responded that disclosure would create no risk of competitive harm for several

---

[*]Its argument that pricing information is not "obtained from" a contractor but rather emerges from contract negotiations between the parties does not appear in the Decision Letter, and so we do not consider it.

reasons, each of which the district court rejected. On appeal, the Air Force relies upon only one of the reasons it gave in the Decision Letter, to wit, it is likely to exercise its options with CCC because switching to a new contractor involves high transaction costs. Indeed, according to the Air Force, switching contractors would be so disruptive to its operations that it is almost certain to exercise the options even if CCC's competitors submit lower bids for the option years. Therefore, releasing the pricing information would not cause "substantial competitive harm" to CCC. As the Air Force correctly notes, we expressly refrained from passing upon this argument in *McDonnell Douglas v. Air Force*. 375 F.3d at 1188.

The argument having now been properly presented, we find it unconvincing. First, the Air Force offers no explanation why, if it was so certain it would exercise the options, it solicited a contract for three years to be followed by four option years; apparently, the Air Force valued (and presumably paid for) the ability to switch to another vendor after three or more years. More important, the argument suffers from a complete lack of empirical support. The Decision Letter states that "based on past practice it is likely [the Air Force] will continue to regularly exercise options," but does not in any way document the predicate "past practice." Nor does it make any effort to quantify the transaction costs the Air Force would incur if it switched to a new contractor for the option years. Yet, as the district court pointed out, 442 F. Supp. 2d at 35, under the Federal Acquisition Regulation an agency may not exercise an option unless it has determined that doing so is "the most advantageous method of fulfilling the Government's need," taking price into account, 48 C.F.R. § 17.207(c)(3); the Air Force does not mention this limitation, and so does not claim the transaction costs would be sufficiently high that it would be likely to exercise the option rather than switch to a bid that is lower by a given percentage.

In the Decision Letter, the Air Force faulted CCC for failing to present evidence that the Air Force has declined to exercise options in the past but surely the Air Force is the party best positioned to provide evidence of its own practice with respect to exercising or not exercising options and, once again, the burden of production properly falls upon the party with access to the information to be produced. *See McDonnell Douglas v. Air Force*, 375 F.3d at 1191 & n.5. In sum, we will not defer to the Air Force's unsupported assertions.

Finally, the Air Force contends the Federal Acquisition Regulation requires it to disclose line-item pricing information, citing 48 C.F.R. § 15.503(b)(1)(iv) (contract unit prices "shall be made publicly available"); *id.* § 15.506(d)(2) (unsuccessful offeror may obtain "debriefing information" that "shall include ... unit prices"); and *id.* § 5.303(b)(2) (agency must include unit prices in public announcement of contract)*,* and that such disclosure is therefore "authorized by law" and not subject to the Trade Secrets Act. *See Bartholdi Cable*, 114 F.3d at 281. As the district court pointed out, however, § 15.506(e)(1) of the FAR states "the debriefing shall not reveal any information ... exempt from release under the Freedom of Information Act including ... [t]rade secrets"; therefore, the provisions cited by the Air Force do not independently remove any information from coverage under Exemption 4. The Air Force attempts to explain away this limitation on the ground that it "logically applies only to information other than the information specifically delineated as required to be disclosed." This statement is just illogical; the very purpose of § 15.506(e)(1) is to protect from disclosure information that the FAR would otherwise require the Air Force to disclose.

Because CCC has shown that release of the pricing information here at issue would cause it substantial competitive harm with respect to the option years in its contract with the Air Force, we need not address its alternative argument that release

would cause it competitive harm when seeking future procurements. Nor need we pass upon CCC's further contention that release would impair the ability of the Air Force to obtain information in the future.

## III. Conclusion

The Air Force has given us no reason to deviate from our established precedent that line-item pricing information is subject to Exemption 4 of the FOIA. Its explanation for why disclosure of the information at issue would not cause substantial competitive harm to CCC lacks empirical support and is unconvincing. The judgment of the district court is therefore

*Affirmed.*

11

TATEL, *Circuit Judge*, concurring: I agree with my colleagues that under our reverse-FOIA case law, the Exemption 4 test outlined in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974), applies to line-item government contract prices like the ones at issue here. *See* Maj. Op. at 4; *McDonnell Douglas Corp. v. Air Force*, 375 F.3d 1182, 1187-92 (D.C. Cir. 2004); *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 305-07 (D.C. Cir. 1999). Because the Air Force has merely renewed arguments we have already rejected, and because it has offered inadequate support for its claim that transaction costs will almost certainly preclude it from switching to a new contractor, *see* Maj. Op. at 8, I join the court's decision.

That said, I believe Judge Garland had it right in his *McDonnell Douglas v. Air Force* dissent. Not only did he persuasively critique how the court there applied the *National Parks* competitive harm test to facts closely resembling the record here, 375 F.3d at 1194-1203 (Garland, J., dissenting), but he also rightly questioned "whether it makes sense to regard prices actually paid *by the government* as trade secrets 'of any person' under the Trade Secrets Act or as confidential commercial or financial information 'obtained from a person' under Exemption Four of FOIA," *id.* at 1203 (citations omitted). After all, given that FOIA's primary purpose is to inform citizens about "what their government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989), it seems quite unlikely that Congress intended to prevent the public from learning how much the government pays for goods and services. Moreover, the Air Force, as its position in this case well demonstrates, would prefer to disclose contract line-item and option prices because in a competitive bidding environment such information may well save money for the government and the taxpayers who fund it. By contrast, entities whose interests lie in charging government agencies as much as possible, or in preventing others from charging less for the same services, would prefer to keep such data confidential.

Thus, applying the *National Parks* competitive harm test to agreed-upon prices in government contracts "may bar disclosure of such prices in the very situation in which the public interest in disclosure is at its apogee." *McDonnell Douglas v. Air Force*, 375 F.3d at 1203 (Garland, J., dissenting). Like Judge Garland, I find that result troubling and inconsistent with FOIA's fundamental objective. But believing the question settled in this circuit, I am compelled to join the court's conclusion that the Air Force must keep the requested pricing information free from public scrutiny.