**PUBLIC COPY – SEALED INFORMATION DELETED**

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 19, 2018        Decided April 12, 2019

No. 18-5099

JOHN DOE, 1 AND JOHN DOE, 2,
APPELLANTS

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-02694)

———

*John P. Elwood* argued the cause for appellants. With him on the briefs were *Michael S. Dry, Katherine Cooperstein, William W. Taylor III, Carlos T. Angulo,* and *Dermot Lynch.*

*Haven G. Ward,* Attorney, Federal Election Commission, argued the cause for appellee. With her on the brief were *Kevin Deeley,* Associate General Counsel, *Charles Kitcher,* Acting Assistant General Counsel, and *Robert W. Bonham III,* Senior Attorney.

*Adav Noti, Mark P. Gaber, Stuart C. McPhail,* and *Adam J.*

**PUBLIC COPY – SEALED INFORMATION DELETED**

*Rappaport* were on the brief for *amici curiae* Citizens for Responsibility and Ethics in Washington and Anne Weismann in support of Federal Election Commission and affirmance.

Before: GARLAND, *Chief Judge*, HENDERSON, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* HENDERSON.

RANDOLPH, *Senior Circuit Judge:*[1] This is an appeal from the decision of the district court refusing to enjoin the Federal Election Commission from releasing information identifying a trust and its trustee in connection with a misreported federal campaign contribution. *Doe v. FEC*, 302 F. Supp. 3d 160 (D.D.C. 2018).

Plaintiffs – the trust and its trustee – appear *incognita* as John Doe 2 and John Doe 1. They claim that the Commission's release of documents identifying them would violate the First Amendment to the Constitution, the Federal Election Campaign Act (FECA), and the Freedom of Information Act (FOIA). Plaintiffs and the Commission have filed some of the documents bearing on this case under seal.

The case began when an organization – Citizens for Responsibility and Ethics in Washington (CREW), which appears here as amicus curiae – filed a complaint with the

---

[1] **NOTE**: Portions of this opinion contain **Sealed Information**, which has been redacted.

3

Commission alleging that a $1.71 million contribution to a political action committee in October 2012 was made and reported in the name of someone other than the actual donor.

The Commission's regulation, implementing 52 U.S.C. § 30122,[2] states that no person shall "[m]ake a contribution in the name of another;" "[k]nowingly permit his or her name to be used to effect that contribution;" "[k]nowingly help or assist any person in making a contribution in the name of another;" or "[k]nowingly accept a contribution made by one person in the name of another." 11 C.F.R. § 110.4(b)(1)(i)–(iv).[3]

In this case the Commission, acting on CREW's allegations, voted 6-0 finding reason to believe that the American Conservative Union violated § 30122 "by knowingly permitting its name to be used to effect a $1.71 million contribution in the name of another to Now or Never PAC, an independent expenditure-only political committee. The Commission also found reason to believe that [others implicated in CREW's complaint] violated 52 U.S.C. § 30122 by making the contribution in the name of another." Memorandum from Lisa Stevenson, Acting Gen. Counsel, to FEC 1 (Aug. 4, 2017) (footnote omitted), https://www.fec.gov/files/legal/murs/6920

---

[2] 52 U.S.C. § 30122 provides: "No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person."

[3] *See also United States v. Boender*, 649 F.3d 650, 660 (7th Cir. 2011); *United States v. O'Donnell*, 608 F.3d 546, 553–54 (9th Cir. 2010).

4

/17044435462.pdf. The Commission therefore authorized an investigation. *Id.*; *see also* 52 U.S.C. § 30109(a)(2).

The investigation, conducted by the General Counsel, traced the $1.71 million contribution and revealed the following undisputed facts. Government Integrity, LLC, a Delaware limited liability corporation, was formed in September 2012 for the purpose of making political contributions. ███████████ ████████████████████ On or about October 31, 2012, the trust, presumably at the direction of its trustee, wired $2.5 million to Government Integrity. Minutes after receipt, Government Integrity wired $1.8 million to the American Conservation Union, which then wired the $1.71 million contribution to the political action committee, the Now or Never PAC. ████████████████████████████████████████████████

While participating in these sequential transactions on October 31, 2012, James C. Thomas, III served as the lawyer for Government Integrity and, at the same time, as the treasurer of the Now or Never PAC. Thomas filed a report with the Commission, on behalf of the PAC, listing the American Conservative Union (ACU) as the source of the $1.71 million even though ACU considered itself merely a "pass through" for the contribution.

The General Counsel, in recommending that the Commission take enforcement action, concluded that this nearly simultaneous three-step transaction – from the trust to Government Integrity, from Government Integrity to ACU, and from ACU to the PAC – "suggests that the parties went through significant lengths to disguise the true source of the funds." Third General Counsel's Report at 11, Am. Conservative

PUBLIC COPY – SEALED INFORMATION DELETED

Union, No. MUR 6920 (FEC Sept. 15, 2017), https://www.fec.gov/files/legal/murs/6920/17044435484.pdf.

In 2017, the Commission, rather than bringing an enforcement action, entered into a "conciliation agreement" with Government Integrity, LLC, the American Conservative Union, the Now or Never PAC, and Thomas. Conciliation Agreement, Am. Conservative Union, No. MUR 6920 (FEC Nov. 3, 2017), https://www.fec.gov/files/legal/murs/6920/170 44434756.pdf; *see also* 52 U.S.C. § 30109(a)(4)(A)(i). These respondents to CREW's complaint agreed not to contest the Commission's determination that each of them violated § 30122 because the source of the $1.71 million contribution had been disguised. The conciliation agreement imposed an overall civil penalty of $350,000. The trust and the trustee were not parties to the agreement and, ██████████████████████████ ████████████████████████████████ were not identified within it.

Because it accepted the conciliation agreement, the Commission voted to close its file. Pursuant to its disclosure policy, the Commission announced that it would release documents from the investigation, some of which identified the trust and trustee. *See generally* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702, 50,702–03 (Aug. 2, 2016) [hereinafter Disclosure Policy]. The Commission later issued those documents. It removed the disputed identifying information before publication pending the outcome of this lawsuit.

Plaintiffs' complaint sought an injunction barring the Commission from revealing their identities. They did not deny the Commission's assertion that the trust was the source of the $1.71 million contribution. Distinguishing *AFL-CIO v. FEC*,

6

**PUBLIC COPY – SEALED INFORMATION DELETED**

333 F.3d 168 (D.C. Cir. 2003), the district court held that the First Amendment did not prevent the Commission from disclosing the identity of the trust and trustee; that the application of the Commission's disclosure policy to plaintiffs was reasonable; and that FECA's provisions and the regulations thereunder did not bar the disclosure and authorized the Commission's action. *Doe*, 302 F. Supp. 3d at 165–74.

## I.

The basic claim of the trust and the trustee is that the Commission had no statutory authority to disclose any documents identifying them.[4] They point out that FECA "affirmatively and unambiguously provides for disclosure of two – and *only* two – items: (1) 'any conciliation agreement signed by both the Commission and the respondent' and (2) FEC 'determination[s] that a person has not violated [FECA or other federal election laws].' 52 U.S.C. § 30109(a)(4)(B)(ii)." Does' Br. 32 (alterations in original). As to (1), the Commission has made the conciliation agreement public. As to (2), the Commission did not decide whether plaintiffs violated FECA.

Plaintiffs' theory must be that FECA's specification of what the Commission is required to disclose deprives the Commission

---

[4] The district court rejected plaintiffs' argument that the Commission would be violating 52 U.S.C. § 30109(a)(12)(A), which forbids disclosure of an "investigation" unless the person being investigated consents. *Doe*, 302 F. Supp. 3d at 166–68. On appeal, plaintiffs have abandoned this argument. *See Fox v. Gov't of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015).

7

of authority to disclose anything else.[5] And so they say that if the Commission publicly releases the additional material it would be acting "not in accordance with law" under the Administrative Procedure Act. 5 U.S.C. § 706(2)(A).[6]

Plaintiffs' argument presents an obvious question: "not in accordance with" what "law"? The Commission has a long-standing regulation requiring it to make public its action terminating a proceeding and "the basis therefor." 11 C.F.R. § 111.20(a).

Does an agency's disclosure regulation constitute "law" within the meaning of § 706 of the Administrative Procedure Act? A similar question was presented in *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979). The Supreme Court answered: "authorized by law" includes "properly promulgated, substantive agency regulations." 441 U.S. at 295. We gave the same answer in *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 281 (D.C. Cir. 1997). Although these FOIA cases were interpreting the Trade Secrets Act, 18 U.S.C. § 1905, their statements apply

---

[5] Without saying as much, plaintiffs implicitly invoke the familiar negative-implication canon – the "expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*)." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). See *Texas Rural Legal Aid, Inc. v. Legal Services Corp.*, 940 F.2d 685, 694 (D.C. Cir. 1991), stating that the "*expressio* maxim" may be "inappropriate in the administrative context" in light of cases such as *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 372 (1973).

[6] The trust and trustee dispute the release of their names and the Commission's planned removal of the redactions. They have not contested the release of the documents in redacted form, which has already occurred.

8

as well to the quoted language in the Administrative Procedure Act.

Plaintiffs have not argued that § 111.20(a) is anything other than a "properly promulgated" regulation.[7] FECA empowers the Commission to "prescribe[] forms and to make, amend, and repeal such rules . . . as are necessary to carry out the provisions of this Act," 52 U.S.C. § 30107(a)(8), and to "formulate policy with respect to" the Act, 52 U.S.C. § 30106(b)(1).[8] When an agency's "empowering provision" contains such language, the courts will sustain a regulation that is "reasonably related" to the purposes of the legislation. *Mourning*, 411 U.S. at 369 (quoting

---

[7] *See Bartholdi*, 114 F.3d at 281–82:

> Bartholdi argues that § 0.457 of the Commission's regulations does not meet the definition of "authorized by law" under *Chrysler*. But *Bartholdi* did not raise this challenge before the Commission. Bartholdi's application for review made no mention of *Chrysler*. Because Bartholdi failed to challenge the validity of § 0.457 before the Commission, we decline to consider the issue.

*See also Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.").

[8] Congress gave the Commission the "primary and substantial responsibility for administering and enforcing [FECA]," "extensive rulemaking and adjudicative powers," and the authority to "formulate general policy with respect to the administration of [FECA]." *Buckley v. Valeo*, 424 U.S. 1, 109, 110 (1976) (per curiam) (citation omitted); *see also* 52 U.S.C. § 30111(a)(8).

PUBLIC COPY – SEALED INFORMATION DELETED

*Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 280 (1969)). This regulation – like the regulation in *Mourning* – requires more disclosure than the governing statute, but that is no reason for rejecting it. *Id.* at 371–73. The Supreme Court long has recognized that "[g]rants of agency authority comparable in scope" to FECA's provisions at issue here "have been held to authorize public disclosure of information . . ., as the agency may determine to be proper upon a balancing of the public interests involved." *FCC v. Schreiber*, 381 U.S. 279, 291–92 (1965).

As to this particular regulation's relationship to the purposes of FECA, we have recognized that "deterring future violations and promoting Commission accountability may well justify releasing more information than the minimum disclosures required by" the statute. *AFL-CIO*, 333 F.3d at 179. The Commission's 2016 Disclosure Policy, adopted in response to *AFL-CIO*, considered the public and private interests involved and reasonably concluded that disclosure of the contemplated documents "tilts decidedly in favor of public disclosure, even if the documents reveal some confidential information." Disclosure Policy, 81 Fed. Reg. at 50,703.[9]

---

[9] When the Commission ended its investigation and closed the file, it "terminate[d] its proceedings" within the meaning of 11 C.F.R. § 111.20(a), as the district court held. The "proceedings" included an investigation of the plaintiffs and a Commission vote on whether to take action against them. The documents containing plaintiffs' names reveal the "basis" for the Commission's actions. *Doe v. FEC*, 302 F. Supp. 3d at 172–73.

10

II.

Plaintiffs claim that the First Amendment to the Constitution barred the Commission from publicly identifying them. We agree with the district court that *Citizens United v. FEC*, 558 U.S. 310 (2010), forecloses their argument. The Supreme Court there rejected the argument that FECA's disclosure provisions violated the First Amendment. 558 U.S. at 366–71. The provision requiring contributions to be made in the name of the source of the funding – 52 U.S.C. § 30122 – is thus plainly constitutional. *Citizens United* left open the possibility of an as-applied First Amendment challenge, but only if the donor proved that revealing its identity would probably bring about threats or reprisals. 558 U.S. at 370. Plaintiffs provided no such evidence and did not allege that they would be subject to threats or reprisals. They did claim that disclosing their identity would "chill" them from engaging in political activity. But this does not distinguish them from others who make campaign contributions. And in any event, the Supreme Court rejected just such a claim of "chill" in *Citizens United*. *Id.*; *see also AFL-CIO*, 333 F.3d at 176–178.

III.

This brings us to plaintiffs' argument resting on the Freedom of Information Act. Under FOIA, 5 U.S.C. § 552, federal agencies must make their records available to the public. There are several exceptions. One is for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This exemption, plaintiffs claim, entitled them to

11

an injunction preventing the Commission from disclosing their identities.

This is not a run-of-the-mill "reverse-FOIA" case. In the typical "reverse-FOIA" case an entity submits information to an agency and later "seeks to prevent the agency that collected the information from revealing it to a third party in response to the latter's FOIA request." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1133 n.1 (D.C. Cir. 1987).

Here neither the trust nor the trustee provided any of the information the Commission would release. In fact, when the Commission served these plaintiffs with a subpoena seeking information, they refused to comply and provided no information. For another thing, when the Commission announced its intention to disclose the documents containing plaintiffs' names, no FOIA request was pending.

In these circumstances, FOIA cannot be used to prevent the Commission from publicly revealing plaintiffs' identities. FOIA is a disclosure statute. If an agency wrongly withholds information in the face of a proper FOIA request, it violates that statute. But if an agency discloses information pursuant to other statutory provisions or regulations, the agency cannot possibly violate FOIA. *Chrysler Corp. v. Brown* held that the FOIA exemptions regime in § 552(b) on which the trust and the trustee rely "demarcates the agency's obligation to disclose; it does not foreclose disclosure." 441 U.S. at 292. In other words, "Congress did not limit an agency's discretion to disclose information when it enacted the FOIA." *Id.* at 294; *see also Bartholdi*, 114 F.3d at 281.[10]

---

[10] Many reverse-FOIA cases are explained in light of the Trade Secrets Act, 18 U.S.C. § 1905, which can constrain an agency's

12

In any event, there is nothing to plaintiffs' complaint that their privacy would be unduly compromised if their identities were revealed. They emphasize that the Commission did not determine whether they violated FECA. That is true but beside the point. The conciliation agreement, the General Counsel's report, and other documents contained evidence that the trust and its trustee "assist[ed] [a] person in making a contribution in the name of another." 11 C.F.R. § 110.4(b)(1)(iii).[11] The conciliation agreement stated that Government Integrity, LLC agreed not to contest its violation of FECA's bar against making a contribution in the name of another. ██████████

We add that, under Exemption 7(C), the Commission would not have had discretion to withhold information identifying the trust in response to a FOIA request. Revealing the name of the trust could not constitute an "unwarranted invasion of personal privacy" because "personal privacy" in Exemption 7(C) refers to "individuals," not "corporations or other artificial entities." *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011). To state the obvious, a trust is an artificial entity. The Commission thus not only had the authority to release the trust's identity, it may well have had the legal duty to do so had that information been requested.

---

disclosure discretion, *see, e.g., Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008).

[11] This regulation applies to those who "initiate or instigate or have some significant participation" in the making of a contribution in the name of another. *See* Affiliated Committees, Transfers, Prohibited Contributions, Annual Contribution Limitations and Earmarked Contributions, 54 Fed. Reg. 34,098, 34,105 (Aug. 17, 1989).

**PUBLIC COPY – SEALED INFORMATION DELETED**

As to the trustee, plaintiffs insist that if and when the Commission makes the name of the trust public – as it must – this would be tantamount to revealing the name of the trustee as well. Does' Br. 26–27. Even if this were so, the trustee's privacy interest in his representational capacity is minimal. In addition "[t]he disclosures with which the statute is concerned are those of 'an intimate personal nature' such as marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, and reputation. *Sims v. CIA*, 642 F.2d 562, 574 (D.C. Cir. 1980). Information relating to business judgments and relationships does not qualify for exemption. *See id.* at 575. This is so even if disclosure might tarnish someone's professional reputation. *See Cohen v. EPA*, 575 F. Supp. 425, 429 (D.D.C. 1983)." *Wash. Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988).[12] While the Commission may nevertheless have had discretion to withhold the trustee's name, it was not required to do so.

We therefore affirm the judgment of the district court, and remand for proceedings consistent with this opinion.

*So ordered.*

---

[12] *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), decided only that an agency may – not must – withhold "the names and addresses of third parties mentioned in witness interviews, of customers listed in stock transaction records obtained from investment companies, and of persons in correspondence with the" agency. *Id.* at 1205.

**PUBLIC COPY – SEALED INFORMATION DELETED**

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in part and dissenting in part: I agree with much of the Court's opinion which ably disposes of the plaintiffs' Freedom of Information Act and First Amendment arguments.[1] But I believe my colleagues err in concluding that the Federal Election Commission (Commission) has authority under the Federal Election Campaign Act of 1971, Pub. L. No. 92-225, 86 Stat. 3, as amended (codified at 52 U.S.C. §§ 30101 *et seq*) (FECA or Act), to disclose documents from MUR 6920 that reveal the plaintiffs' identities. The Commission "has as its sole purpose the regulation of core constitutionally protected activity." *AFL-CIO v. FEC*, 333 F.3d 168, 170 (D.C. Cir. 2003). Its "investigations into alleged election law violations frequently involve subpoenaing materials of a 'delicate nature,'" materials regarding "political expression and association" that go to "the very heart of the" First Amendment. *Id.* (quoting *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981)). These serious privacy and First Amendment interests make holding the statutory line even more critical. I would preserve the delicate balance that the Congress struck and, accordingly, limit the Commission to making only those disclosures expressly authorized by FECA. The disclosures at issue, I submit, are not among them.

The plaintiffs—a trust and a trustee—gave money to Government Integrity, LLC. Government Integrity immediately transferred the money to the American Conservative Union, which, in turn, made a large contribution to a political action committee, Now or Never PAC. The Commission opened an investigation into the transfers and the contribution, naming as respondents, *inter alia*, Government

---

[1] Accordingly, I concur in Parts II and III of the majority opinion.

**PUBLIC COPY – SEALED INFORMATION DELETED**

Integrity, the American Conservative Union and Now or Never PAC. *See* 52 U.S.C. § 30109(a)(1)–(2) (granting authority to commence investigation upon receiving complaint). Acting under authority given him by 11 C.F.R. § 111.8(a), the Commission General Counsel asked the Commission to "find reason to believe" that the trust and trustee plaintiffs "ha[ve] committed . . . a violation" and should be added as respondents. In a 2-3 vote, the Commission declined the request; the three Commissioners voting "no" explained that their decision was based on prosecutorial discretion—namely, a rapidly approaching statute of limitations and a novel theory supporting the trust/trustee plaintiffs' culpability under FECA. The Commission later entered a conciliation agreement with the respondents, who admitted violating FECA.

In closing MUR 6920, the Commission plans to make public its investigative files, invoking as authority a FECA regulation and a policy statement. The disclosure regulation provides: "[i]f a conciliation agreement is finalized, the Commission shall make public such conciliation agreement forthwith." 11 C.F.R. § 111.20(b). It also declares: "[i]f the Commission makes a finding of no reason to believe or no probable cause to believe or otherwise terminates its proceedings, it shall make public such action *and the basis therefor*." *Id.* § 111.20(a) (emphasis added). The disclosure regulation does not specify which documents are included in the "basis" for the Commission's action. *Id.* The Commission fills the gap with a policy statement, which identifies twenty-one "categories of documents integral to its decisionmaking process that will be disclosed upon termination of an enforcement matter." *Disclosure of Certain Documents in Enforcement and Other Matters*, 81 Fed. Reg. 50,702 (Aug. 2, 2016). The plaintiffs began this litigation pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 500 *et seq,*

3

to stop the Commission from revealing their identities in its MUR 6920 disclosures.

The APA requires a reviewing court to "set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). The plaintiffs assert that FECA's plain text prohibits the Commission from making public the documents revealing their identities and thus any such disclosure is "not in accordance with law."[2] *Id.* It is hornbook law that an agency cannot grant itself power via regulation that conflicts with plain statutory text. *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 703 (D.C. Cir. 2009) ("[R]egulation contrary to a statute is void."); *Murphy v. IRS*, 493 F.3d 170, 176 n.* (D.C. Cir. 2007) (if "the regulation conflicts with the plain text, . . . the statute clearly controls"). As a result, the Commission cannot use a regulation or policy statement to contravene the plain limits that FECA sets on its disclosure authority. This case, then, turns on whether FECA prohibits—by necessary implication—the disclosure of records containing the plaintiffs' identities. If so, the Commission's intended disclosures are unlawful and in violation of the APA. 1A Sutherland Statutory Construction § 31.02, at 521 (4th ed. 1985) ("The legislative act is the charter of the administrative agency and administrative action beyond the authority conferred by the statute is ultra vires."). If not, the plaintiffs' challenge fails.

---

[2] Although the plaintiffs' argument focuses on the Commission's lack of authority to release certain documents under FECA, the plaintiffs request as relief only redaction of their own identities, not withholding of the documents *in toto*. The Commission does not argue—nor do my colleagues suggest—that the plaintiffs' failure to ask for more expansive relief in any way affects their merits argument.

4

Section 30109 of FECA sets forth the Commission's disclosure authority. 52 U.S.C. § 30109. It requires disclosure under two circumstances. First, "[i]f a conciliation agreement is agreed upon by the Commission and the respondent, the Commission shall make public any conciliation agreement signed by both the Commission and the respondent." *Id.* § 30109(a)(4)(B)(ii). Second, "[i]f the Commission makes a determination that a person has not violated this Act or chapter 95 or chapter 96 of Title 26, the Commission shall make public such determination." *Id.* These are the only two situations in which FECA affirmatively requires the Commission to make disclosures.

But does FECA *permit* additional non-required disclosures? I think not. *First*, section 30109 does not expressly grant the Commission discretion to make additional disclosures. An "agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 357 (1986). We have held, as a corollary to that principle, "[t]he *duty* to act under certain carefully defined circumstances simply does not subsume the *discretion* to act under other, wholly different, circumstances, unless the statute bears such a reading." *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc). The Congress has charged the Commission with making limited disclosures in two carefully defined circumstances and there is no *textual* basis for concluding that additional discretionary disclosure authority exists.

*Second*, section 30109 includes confidentiality provisions that expressly forbid the Commission from making its investigative files public unless disclosure is otherwise authorized. The first provision states: "[a]ny notification or investigation . . . shall not be made public by the Commission or by any person without the written consent of the person

**PUBLIC COPY – SEALED INFORMATION DELETED**

receiving such notification or the person with respect to whom such investigation is made." 52 U.S.C. § 30109(a)(12)(A). The prohibition against revealing "any investigation" includes—at a minimum—information that would confirm the existence of an investigation. *See AFL-CIO*, 333 F.3d at 174 ("[T]he Commission may well be correct . . . that Congress merely intended to prevent disclosure of the fact that an investigation is pending."). The second provision provides: "[n]o action by the Commission or any person, and no information derived, in connection with any conciliation attempt by the Commission . . . may be made public by the Commission without the written consent of the respondent and the Commission." *Id.* § 30109(a)(4)(B)(i). The section 30109 confidentiality provisions are robust: nearly any disclosure of an investigatory file will reveal the existence of an investigation and thereby violate section 30109(a)(12)(A). *See In re Sealed Case*, 237 F.3d 657, 666–67 (D.C. Cir. 2001) (section 30109(a)(12)(A) "plainly prohibit[s] the FEC from disclosing information concerning ongoing investigations under any circumstances without the written consent of the subject of the investigation"). Moreover, the section 30109 confidentiality provisions do not have expiration dates: they continue to bind the Commission unless and until another provision of section 30109 authorizes disclosure. *See* 52 U.S.C. § 30109(a)(4)(B)(i), (a)(12)(A).

In my view, FECA's disclosure scheme is comprehensive and sets forth precisely when the Commission can and cannot make its records public. The Commission *must* make limited disclosures in two—and only two—cases: (1) upon entering a signed conciliation agreement and (2) after determining that a person did not violate FECA. *See id.* § 30109(a)(4)(B)(ii). In all other cases, the Commission must keep its investigatory information confidential. *See id.* § 30109(a)(4)(B)(i),

**PUBLIC COPY – SEALED INFORMATION DELETED**

(a)(12)(A). The statute does not authorize any *discretionary* disclosure.[3]

Neither mandated disclosure under FECA authorizes the Commission to release documents containing the plaintiffs' identities. Regarding the first, the Commission entered a conciliation agreement in MUR 6920 and the plaintiffs do not take issue with the Commission making that agreement public. *See id.* § 30109(a)(4)(B)(ii). But the Commission's power to release the signed conciliation agreement plainly does not include the remainder of its investigative file. *Id.* ("If a conciliation agreement is agreed upon by the Commission and the respondent, the Commission shall make public any conciliation agreement signed by both the Commission and the respondent."). Regarding the second mandated disclosure—a no violation determination—the Commission concedes that not every enforcement matter ends with a determination of liability *vel non*. Indeed, the Commission sometimes decides against pursuing an investigation as a matter of prosecutorial discretion. *See, e.g., Citizens for Responsibility & Ethics in Washington v. FEC*, 892 F.3d 434, 438 (D.C. Cir. 2018). That is what happened here. The Commission declined to pursue

---

[3] Contrary to the majority's suggestion, my reading of FECA does not rely on the canon of construction *expressio unius est exclusio alterius*, Maj. Op. at 6 n.4, a so-called "feeble helper" in the administrative law context, *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 697 (D.C. Cir. 2014). *Expressio unius*, like other canons of construction, sheds light on the meaning of statutory text. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation . . . ."). But we do not use statutory construction canons if the statutory text is plain. *Id.* at 253–54. FECA's disclosure provisions are plain as day and the *expressio unius* canon is therefore inapplicable.

enforcement against the two plaintiffs as a matter of prosecutorial discretion, citing a rapidly approaching statute of limitations and a novel theory of liability. Because neither basis of disclosure under FECA applies, I believe the Commission's decision to release its documents containing the plaintiffs' identities is contrary to law and should be enjoined. *Cf. In re Sealed Case*, 237 F.3d at 666–67.

The majority reaches a different conclusion without discussing FECA's disclosure provisions. *See* Maj. Op. at 6–9. It instead upholds the Commission's position as a permissible exercise of its general power to make rules "as are necessary to carry out the provisions of" FECA, 52 U.S.C. § 30107(a)(8), and to "formulate policy with respect to" FECA, *id.* § 30106(b)(1). The key to the majority's reading is the United States Supreme Court's holding in *Mourning v. Family Publications Service, Inc.*, which declared that "[w]here the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' . . . the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" 411 U.S. 356, 369 (1973) (alteration in original) (quoting *Thorpe v. Housing Auth. of City of Durham*, 393 U.S. 268, 280–81 (1969)). Applying *Mourning*, my colleagues conclude that the Commission may use its general power to promulgate regulations to authorize disclosures in addition to those carefully limited by section 30109. Maj. Op. at 7–8. In their view, "[t]he Commission's 2016 Disclosure Policy . . . considered the public and private interests involved and reasonably concluded that disclosure of the contemplated documents 'tilts decidedly in favor of public disclosure, even if the documents reveal some confidential information.'" Maj. Op. at 8–9 (quoting

**PUBLIC COPY – SEALED INFORMATION DELETED**

*Disclosure of Certain Documents in Enforcement and Other Matters*, 81 Fed. Reg. at 50,703)).

But Circuit precedent rejects this generous reading of *Mourning*. In *Colorado River Indian Tribes v. National Indian Gaming Commission*, we were called upon to decide whether the Indian Gaming Regulatory Act gives the National Indian Gaming Commission "authority to promulgate regulations establishing mandatory operating procedures for certain kinds of gambling in tribal casinos." 466 F.3d 134, 135 (D.C. Cir. 2006). Unable to find a statutory hook for its regulation, the Gaming Commission, invoking *Mourning*, rested on its general authority to promulgate rules carrying out the Indian Gaming Regulatory Act and the Act's underlying policy goals. *Id.* at 139. We rejected its defense: "[a]n agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority." *Id.* To the contrary, "[a]ll questions of government are ultimately questions of ends and means" so "[a]gencies are therefore 'bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.'" *Id.* (first alteration in original) (first quoting *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993); then quoting *MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 n.4 (1994)). Under *Mourning*, then, we focus both on the goals the Congress seeks to achieve and the mechanism it uses to achieve them. *Id.* at 140 (Congress sought to protect gaming business integrity not generally but instead "through the 'statutory basis for the regulation of gambling' provided in the Act" (quoting 25 U.S.C. § 2702(2))). "This le[d] us back to the opening question—what is the statutory basis empowering the Commission to regulate" the gaming at issue? *Id.* "Finding none," we held that the regulation was invalid. *Id.*

9

**PUBLIC COPY – SEALED INFORMATION DELETED**

*Mourning* does not resolve this case. *See NetCoalition v. SEC*, 615 F.3d 525, 533–34 (D.C. Cir. 2010) ("[A] statute's 'general declaration of policy' does not protect agency action that is otherwise inconsistent with the congressional delegation of authority for '[a]gencies are . . . "bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.""" (second and third alterations in original) (quoting *Colorado River Indian Tribes*, 466 F.3d at 139)). It instead "leads us back to the opening question"—what disclosure mechanism did the Congress use to further FECA's underlying policy goals of deterring election law violations and promoting Commission accountability? *Colorado River Indian Tribes*, 466 F.3d at 140; *see also AFL-CIO*, 333 F.3d at 179 (listing FECA policy goals related to disclosure). I have already given my answer: FECA allows disclosure in two—and only two—circumstances. Because neither circumstance exists here, I believe the Commission is without authority to release the documents containing the plaintiffs' identities and would therefore reverse the district court.

Accordingly, I respectfully dissent from Part I of the majority opinion.